## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **NPD MANAGEMENT AND BUILDING SERVICES, INC.** | **CIVIL ACTION** |
| **VERSUS** | **No. 20-2739** |
| **GEISMAR NORTH AMERICA, INC.** | **SECTION I** |

## ORDER & REASONS

Before the Court is plaintiff NPD Management and Building Services, Inc.'s motion[1] to remand and request for attorney's fees and costs, which defendant Geismar North America, Inc. opposes.[2] The Court denies the motion to remand, and it also declines to award attorney's fees or costs.

### I.     BACKGROUND

The instant action is the second iteration of this litigation.  In 2020, Geismar North America, Inc. ("Geismar"), a Delaware corporation, first commenced a breach of contract action in South Carolina state court against NPD Resources, Inc. ("NPD I").[3]  NPD I is a Texas corporation that "has only been authorized to do business in Texas, Louisiana, Alabama, and Mississippi."[4]  The parties' underlying dispute arose from a 2016 agreement ("the Contract") that required Geismar to manufacture a motor trolley car that NPD I would furnish to the United States Army

---

[1] R. Doc. No. 10 (motion); R. Doc. Nos. 27 & 44 (supplemental memoranda).
[2] R. Doc. Nos. 11, 31, & 43.
[3] R. Doc. No. 11-1, at 2–4.
[4] *See* Declaration of N. Paul Dardar (R. Doc. No. 12-2), at 1, *Geismar N. Am., Inc. v. NPD Res., Inc.*, No. 20-2190 (D.S.C. July 21, 2020).

Corps of Engineers for use at the Bonnet Carré Spillway in St. Charles Parish, Louisiana.[5]  NPD I, as defendant, removed the South Carolina state court action to the United States District Court for the District of South Carolina.[6]  NPD I moved to dismiss the action, arguing lack of personal jurisdiction, and the United States District Court in South Carolina granted that motion on August 19, 2020.  *See Geismar N. Am., Inc. v. NPD Res., Inc.*, No. 20-2190, 2020 WL 4820336 (D.S.C. Aug. 19, 2020).  The formal judgment dismissing the action against NPD I was entered on August 25, 2020.[7]

The next day, on Wednesday, August 26, 2020, a new entity named NPD Management and Building Services, Inc. ("NPD II") was incorporated in the State of Delaware.[8]  N. Paul Dardar ("Dardar") is the president of both NPD I and NPD II.[9]  That same day, Dardar executed a document captioned "Amended Assignment of Contract" ("the Assignment") on behalf of NPD I and NPD II.[10]  The Assignment states that NPD I transferred to NPD II "all of [NPD I's] right, title, and interest in and under the Contract along with any and all rights and claims of [NPD I] may hold

---

[5] R. Doc. No. 11-1, at 3.

[6] R. Doc. No. 11, at 2; R. Doc. No. 11-2, at 2.

[7] *See* Judgment (R. Doc. No. 25), *Geismar N. Am., Inc. v. NPD Res., Inc.*, No. 20-2190 (D.S.C. Aug. 25, 2020).

[8] R. Doc. No. 11-6 (Geismar exhibit showing NPD II's listing on Delaware's Department of State website).  The Court takes judicial notice of Geismar's proffered facts.  *See Kitty Hawk Aircargo, Inc. v. Chao.*, 418 F.3d 453, 457 (5th Cir. 2005) (taking judicial notice of approval published on U.S. agency's website); *Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) (per curiam) (taking judicial notice of Texas agency's website).

[9] R. Doc. Nos. 27-1 and 27-2 (declarations for NPD I and NPD II).

[10] R. Doc. No. 43-1, at 1–2; R. Doc. No. 43-2, at 5–6 (Dardar deposition discussing the Assignment).

[sic] against Geismar."[11]  Additionally, the Assignment provides that NPD II owes to NPD I "the total amount recovered less its costs" and a $5,000.00 fee due upon collection.[12]  NPD I also agrees to indemnify NPD II "for any all of costs incurred by [NPD II] to perform any obligation owed by [NPD I] under the Contract."[13]  NPD II did not make any monetary payment, or provide other consideration, to NPD I upon the execution of this Assignment.[14]

On Monday, August 31, 2020, NPD II filed the instant civil action against Geismar in Louisiana state court demanding, *inter alia*, specific performance and damages arising from the Contract.[15]  Geismar removed the action to this Court from the Twenty-Ninth Judicial District Court for the Parish of St. Charles.[16]  NPD II moved to remand.[17]

NPD II contends that both NPD II and Geismar are corporations organized in

---

[11] R. Doc. No. 43-1, at 1.  In its initial petition, NPD II also alleged that Geismar contracted with a business named C.T. Traina ("Traina") to perform work on the trolley car.  According to the petition, Geismar failed to pay $6,509.02 to Traina, and NPD II now holds that outstanding debt.  R. Doc. No. 1-1, at 8, 10.  NPD II attached a series of emails, dated June 5 and August 11, 2020, discussing the work alleged to be unpaid that Traina performed.  *Id*. at 19.  NPD II claims that Geismar is liable for this "open account" pursuant to La. R.S. 9:2781.  *Id*. at 10.  NPD II states that "now [NPD II] hold's [sic] the claim that was [Traina's] against Geismar."  R. Doc. No. 44, at 2.

[12] *Id*.

[13] *Id*.

[14] R. Doc. No. 43-2, at 5–6.

[15] R. Doc. No. 1-1, at 6, 12–13.

[16] R. Doc. No. 1 (notice of removal).

[17] R. Doc. No. 10.  When this motion was first filed, the Court stayed this case because the South Carolina litigation was pending on appeal in the United States Court of Appeals for the Fourth Circuit.  R. Doc. No. 18.  After the Fourth Circuit affirmed the dismissal, NPD II moved to reopen this case.  R. Doc. No. 19.  *See also Geismar N. Am., Inc. v. NPD Res., Inc.*, 850 F. App'x 185 (4th Cir. 2021).

the State of Delaware and, therefore, the parties are not diverse.[18]  Without diversity, NPD II insists, this Court lacks subject matter jurisdiction, and the case must be remanded.[19]

Geismar argues that NPD II's Louisiana state court petition and motion to remand are "slight of hand performances" designed to destroy diversity jurisdiction.[20] Specifically, Geismar maintains that because NPD I assigned its interests in this litigation to NPD II to defeat diversity, this Court may ignore that assignment as "collusive" and retain jurisdiction, citing *Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181 (5th Cir. 1990).[21]  Following a period of jurisdictional discovery,[22] the parties submitted supplemental briefing to clarify the circumstances of the Assignment.[23]

## II.    LAW AND ANALYSIS

### A.    Standard for remand

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending," unless Congress provides otherwise.  28 U.S.C. § 1441(a).  Jurisdictional facts supporting removal are assessed at the time of removal.  *Louisiana v. American Nat'l Prop. Cas. Co.*, 746 F.3d 633,

---

[18] R. Doc. No. 10, at 1–2.  *See also* R. Doc. No. 27, at 2.
[19] *Id.*
[20] R. Doc. No. 11, 1–2.
[21] R. Doc. No. 11, at 4–10.
[22] R. Doc. No. 34 (minute entry granting jurisdictional discovery).
[23] R. Doc. Nos. 43 & 44.

636–37 (5th Cir. 2014).  However, "diversity of citizenship must exist both at the time

of filing in state court and at the time of removal to federal court." *Coury v. Prot*, 85

F.3d 244, 249 (5th Cir. 1996) (citing *Kanzelberger v. Kanzelberger*, 782 F.2d 774, 776

(7th Cir. 1986)). "In making a jurisdictional assessment, a federal court is not limited

to the pleadings; it may look to any record evidence, and may receive affidavits,

deposition testimony or live testimony concerning the facts underlying the citizenship

of the parties." *Id.* (citing *Jones v. Landry*, 387 F.2d 102 (5th Cir. 1967)).

"For the purposes of diversity jurisdiction, a corporation is a citizen of the state

in which it was incorporated and the state in which it has its principal place of

business." *Tewari De-Ox Systems, Inc. v. Mountain States/Rosen, Ltd. Liability

Corp.*, 757 F.3d 481, 483 (5th Cir. 2014) (citing *Texaco, Inc. v. Insur. Co. of N.A.*, 841

F.2d 1254, 1258 (5th Cir.1988)).  *See also* 28 U.S.C. § 1332(c)(1) ("[A] corporation shall

be deemed to be a citizen of any State by which it has been incorporated and of the

State where it has its principal place of business.").

"The removing party bears the burden of establishing that federal jurisdiction

exists." *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995) (citing *Gaitor v.

Peninsular & Occidental S.S. Co.*, 287 F.2d 252, 253–54 (5th Cir. 1961)). "[A]ny

ambiguities are construed against removal because the removal statute should be

strictly construed in favor of remand." *Smith v. Bank of America Corp.*, 605 F. App'x

311, 314 (5th Cir. 2015) (quoting *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276

F.3d 720, 723 (5th Cir. 2002)).

5

Pursuant to 28 U.S.C. § 1332, a district court has original jurisdiction over cases in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and "all persons on one side of the controversy [are] citizens of different states than all persons on the other side at the time the complaint was filed." *Soaring Wind Energy, L.L.C. v. Catic USA Inc.*, 946 F.3d 742, 750 (5th Cir. 2020) (internal quotation marks and citation omitted).

Neither party disputes that Geismar is a citizen of Delaware as it is incorporated there.[24]  Further, Geismar does not dispute that NPD II is also a Delaware corporation.[25]  Accordingly, NPD II and Geismar are both citizens of the same state.[26]

Ordinarily, this posture would necessitate remand.  However, despite this congruity of citizenship, Geismar contends that removal is proper because the Assignment from NPD I to NPD II was collusive to thwart diversity jurisdiction.[27]  The Court turns to this issue next.

**B.     Partial versus complete assignments**

The "assignment of a complete cause of action to defeat removal," can be "effective to give the state court exclusive jurisdiction."  *Grassi v. Ciba–Geigy, Ltd.*,

---

[24] R. Doc. No. 10-1, at 1; R. Doc. No. 11, at 2.

[25] R. Doc. No. 11, at 3; R. Doc. No. 11-5, at 1–3.

[26] Neither party disputes that this action concerns an amount in excess of $75,000.00, exclusive of interests and costs.  On its face, the petition alleges that the contracted price for the trolley car was $193,500.00.  R. Doc. No. 1-1, at 6.  Further, the petition claims that "NPD" (presumably NPD II) "has gone from doing approximately $3,000,000.00 worth of annual business for this customer to basically zero now for three years."  *Id.* at 10.

[27] R. Doc. No. 43, at 3.

894 F.2d 181, 183 (5th Cir. 1990) (citing *Provident Service Life Assurance Society v. Ford*, 114 U.S. 635, 641 (1885)).  "Once it is determined that the assignment was a complete assignment, the Court's inquiry ends, and the Court does not examine whether the assignment was "'improperly or collusively made.'" *Amalgamated Gadget, L.P. v. Mack*, No. 03-952, 2004 WL 549483, at *4 (N.D. Tex. Feb. 10, 2004). An assignment is complete "where the transfer of a claim is absolute, *with the transferor retaining no interest in the subject matter*[.]"  *Id.* (quoting *Kramer v. Caribbean Mills*, 394 U.S. 823, 828 n.9 (1963)) (emphasis added).

Conversely, a plaintiff may not make a "collusive" partial assignment of its interests in the subject matter of litigation to destroy valid diversity jurisdiction and to prevent the removal of an action to federal court. *Grassi*, 894 F.2d at 184–86.  With a partial assignment "an *actual* transfer of a fractional interest is made[.]"  *Id.* at 185. (emphasis in original); *see also Smilgin v. New York Life Ins. Co.*, 854 F. Supp. 464, 466 (S.D. Tex. 1994) (finding an assignment was partial where the plaintiff assigned 1% of a claim to a nondiverse party); *JMTR Enterprises, L.L.C. v. Duchin*, 42 F. Supp. 2d 87, 92 (D. Mass. 1999) (finding an assignment was partial where the plaintiffs assigned 25% of their claim to a nondiverse corporation).  A district court has "both the authority and the responsibility, under 28 U.S.C. §§ 1332 and 1441, to examine the motives underlying a partial assignment which destroys diversity and to disregard the assignment in determining jurisdiction if it be found to have been made principally to defeat removal." *Grassi*, 894 F.2d at 185.

Geismar maintains that the Assignment between NPD I and NPD II is "nothing more than a veiled attempt to disguise a fractional collection fee arrangement with a shell corporation."[28]  Geismar further argues that "[s]uch disguised assignments are practically always viewed as collusive by courts."[29]  NPD II maintains that NPD I "fully assigned" the claims at issue here, and "that is the end of the inquiry."[30]  Further, NPD II argues that Geismar "misrepresents the nature of the assignment."[31]

The Court first examines the Assignment, which states in the third paragraph:

[NPD I] wishes to and does assign, transfer, set over and deliver unto [NPD II], its successors and assigns, all of his right, title, and interest in and under the Contract along with any and all rights and claims of [NPD I] may hold against Geismar, and [NPD II] wishes to and does accept the assignment and [NPD I's] obligations under the Contract.[32]

In isolation, this plain language indicates that NPD I would retain no interest in the claims assigned to NPD II.  However, the fifth paragraph provides:

[NPD II] owes [NPD I] the total amount recovered less its costs (any and all costs of collection, including, but not limited to attorney fees, court costs, expert costs, etc. and costs incurred in performing any obligation owed under the Contract) and a $5,000 fee due upon collection, any funds collected are applied first to [NPD II]'s fee, then [NPD II]'s costs, and then to its obligation to [NPD I].[33]

The sixth paragraph then states that NPD I "indemnifies [NPD II] for any and all costs incurred by [NPD II] to perform any obligation owed by [NPD I] under the

---

[28] R. Doc. No. 43, at 3.
[29] *Id.*
[30] R. Doc. No. 27, at 2.
[31] R. Doc. No. 44, at 1.
[32] R. Doc. No. 43-1, at 1.
[33] *Id.*

Contract."[34]

The Assignment between NPD I and NPD II is analogous to the creditor in *Kramer* who "assigned its entire interest in a debt to an attorney, who in turn agreed to convey 95% of any net recovery back to the creditor." *Grassi*, 894 F.2d at 184; *Kramer*, 394 U.S. at 824. The language in the third paragraph of the Assignment purports to transfer "all" of NPD I's "right, title, and interest" in the Contract as well as "any and all claims" against Geismar.[35] However, NPD II is bound to remit back "the total amount recovered," less any costs and the $5,000.00 fee.[36] This remittance language makes clear that the transfer was not actually "absolute, *with the transferor retaining no interest in the subject matter.*" *Kramer*, 394 U.S. at 828 n.9 (emphasis added). This arrangement demonstrates that NPD I made a "transfer of a fractional interest" in the Contract to NPD II. *Grassi*, 894 F.2d at 185. Therefore, the Assignment between NPD I and NPD II is partial, rather than complete.

## C. Factors to determine whether a partial assignment is collusive

"[T]he issue of whether the assignment was improperly or collusively made is to be resolved as a simple question of fact." *Id.* at 186 (citing *Bass v. Tex. Power & Light Co.*, 432 F.2d 763, 766–67 (5th Cir. 1970)). "[I]t is the reality of an assignment, not the term used to describe it, that courts should look to determine whether it was collusive." *Nukote of Illinois, Inc. v. Clover Holdings, Inc. et al.*, No. 10-580, 2011 WL 13290667, at *2 (N.D. Tex. Mar. 8, 2011). To make this determination, a district court

---

[34] *Id.*
[35] *Id.*
[36] *Id.*

9

may examine several factors, including: (1) the comparative size of the interest assigned; (2) whether the assignee held any interest in the litigation before the assignment; (3) whether the assignor and assignee are controlled by the same party; (4) whether the assignment occurred shortly before the litigation commenced; (5) whether the assignment represents what is essentially a contingent fee arrangement for collection work; and (6) whether there is a strong likelihood of prejudice against the defendant.  *Grassi*, 894 F.2d at 186; *see also Smilgin*, 854 F. Supp. at 466 (applying the *Grassi* factors); *JMTR Enterprises, L.L.C.*, 42 F. Supp. 2d at 92 (same). The Court addresses these factors in turn.

### 1.

First, the size of the interest that NPD I transferred is relatively small compared to the recovery that NPD II might ultimately collect.  NPD II alleges that the trolley car's price was $193,500.00 and that the trolley car has never been satisfactorily put into service.[37]  NPD II also alleges that it has lost "approximately $3,000,000.00 worth of annual business" for a period of three years.[38]  The collection fee of $5,000.00 and costs payable to NPD II is a very small percentage of the potential ultimate recovery from Geismar.  This factor weighs in favor of a finding of collusiveness.

### 2.

Next, NPD II had no interest in the subject matter of this litigation prior to the

---

[37] R. Doc. No. 1-1, at 5.
[38] *Id.* at 10.

Assignment.  Dardar testified that NPD II had no other rights against Geismar besides those that it obtained in the Assignment.[39]  Because NPD II did not hold any interest in this litigation before the Assignment, this factor weighs in favor of a finding of collusiveness.

### 3.

The Assignment lists Dardar as the "President" of NPD I and the "Manager" of NPD II, and he was able to bind those entities by signing that document.[40]  Further, Dardar also submitted two declarations stating the he is the president of both NPD I and NPD II.[41]  Accordingly, the Court finds that Dardar is able to exert a level of control over both entities, and this factor also weighs in favor of a finding of collusiveness.[42]

### 4.

The timing of the Assignment also suggests that the transfer was made to frustrate diversity jurisdiction.  NPD II was formed in Delaware on August 26, 2020, just one day after the entry of judgment by the U.S. District Court in South Carolina dismissing the action between Geismar and NPD I.  The Assignment between NPD I

---

[39] R. Doc. No. 43-2, at 8.
[40] R. Doc. No. 43-1, at 1.
[41] R. Doc. Nos. 27-1 & 27-2.  The Court also notes that the letters "NPD"—which are found in the names of both entities—are presumably the initials for "N. Paul Dardar."
[42] Geismar also asserts that NPD II's counsel in this civil action "worked with Geismar counsel after the filing of the South Carolina Action."  R. Doc. No. 43, at 6.  Geismar argues that this alleged fact also shows a level of control among NPD I and NPD II.  Geismar has not offered any documentation or deposition testimony in support of this contention, and the Court disregards it as unsupported.

and NPD II is dated the same day as NPD II's incorporation in Delaware.[43]  Further,

NPD II's petition in Louisiana state court bears a file stamp of August 31, 2020.[44]

Taken together, the close temporal proximity of these events leads the Court to infer

that Dardar created NPD II to obtain the claims against Geismar and prosecute this

case.  This factor weighs in favor of a finding of collusiveness.

5.

Next, the Assignment represents what is essentially a contingent fee

arrangement for collection work.  Specifically, Geismar notes that the plain language

of the Assignment lists the $5,000.00 share of funds for NPD II as "a fee due upon

collection."[45]  Similarly, Dardar's deposition testimony discloses that NPD II did not

make any monetary payment to NPD I to obtain the rights transferred in the

Assignment, and NPD II is obligated to remit all funds collected after reimbursing its

costs and receiving the collection fee.[46]

NPD II maintains that the $5,000.00 fee is "in no way contingent," and that

NPD II is "obligated to provide a motor car to [NPD I's] client."[47]  Despite these

assertions, NPD II does not explain how the $5,000.00 fee—which is "due upon

---

[43] R. Doc. No. 11-6 (record from the Delaware Department of State listing an incorporation date for NPD II of August 26, 2020).

[44] R. Doc. No. 1-1, at 5.

[45] R. Doc. No. 43-1, at 1.

[46] R. Doc. No. 43-2 at 5–8.

[47] R. Doc. No. 44, at 2.  NPD II's supplemental memorandum states that the "consideration of the assignment received by NPD Resources, Inc. is not a mere $5,000 and in no way contingent."  R. Doc. No. 44, at 2.  Under the terms of the Assignment, the $5,000.00 portion of funds collected will be retained by NPD II (*i.e.*, NPD Management and Building Services, Inc., not NPD Resources, Inc.).  R. Doc. No. 43-1, at 1.  NPD II's response misapprehends Geismar's argument.

collection"[48]—is not actually contingent.  This factor weighs in favor of a finding of collusiveness.

### 6.

Lastly, there exists a strong likelihood of prejudice.  Geismar argues that remand would deprive it of the right to proceed in federal court, citing *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (stating that courts should be "vigilant to protect the [defendant's] right to proceed in the Federal court.").  As noted by the Fifth Circuit in *Grassi*, "Congress has created diversity jurisdiction and the right of removal under 28 U.S.C. § 1441 for the purposes of protecting non-resident defendants from local prejudice."  894 F.2d at 185.  Thus, given the evidence indicating that NPD I transferred its rights to destroy diversity jurisdiction, the Court agrees that Geismar would be prejudiced by the loss of a right that Congress specifically created to enable it to proceed in federal court  Therefore, this factor also weighs in favor of a finding of collusiveness.

On balance, each of the factors outlined in *Grassi* weighs in favor of finding that the partial Assignment between NPD I and NPD II was collusive.  Accordingly, the Court finds as a matter of fact that the Assignment was collusive and that the motive underlying it was to destroy federal diversity jurisdiction and to remain in state court.

### III.   CONCLUSION

Having determined that the Assignment from NPD I to NPD II was partial

---

[48] R. Doc. No. 43-1, at 1.

and collusive, the Court disregards that transfer and looks to the citizenship of the parties. As discussed, Geismar is a citizen of Delaware; and its principal place of business is in Beaufort County, South Carolina.[49] NPD I is a Texas corporation that "has only been authorized to do business in Texas, Louisiana, Alabama, and Mississippi."[50] Therefore, the parties are of diverse citizenship, and diversity jurisdiction exists pursuant to 28 U.S.C. § 1332.

NPD II also asks the Court to award it costs and fees resulting from the removal, pursuant to 28 U.S.C. § 1447(c).[51] "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005). Given the discussion above, the Court will not award attorney's fees and costs.

Accordingly, for all the reasons explained above,

**IT IS ORDERED** that NPD II's motion[52] to remand to the Twenty-Ninth Judicial District Court for the Parish of St. Charles is **DENIED.**

**IT IS FURTHER ORDERED** that NPD II's request for attorney fees and

---

[49] In its motion to remand, NPD II states that Geismar is a citizen of Delaware, *see* R. Doc. No. 10, at 1, and Geismar concedes this point. *See* R. Doc. No. 11, at 2. Further, Geismar states that its principal place of business is located in Beaufort County, South Carolina. *See* R. Doc. No. 11-1, at 2. NPD II does not dispute the same.

[50] *See* Dardar Declaration (R. Doc. No. 12-2), at 1, *Geismar N. Am., Inc. v. NPD Res., Inc.*, No. 20-2190 (D.S.C. July 21, 2020). In this declaration, Dardar offers numerous facts to demonstrate that NPD I does not conduct business in South Carolina. *Id.* at 1–5.

[51] R. Doc. No. 10, at 2.

[52] R. Doc. No. 10.

costs is **DENIED**.

New Orleans, Louisiana, November 10, 2021.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**